Irene M. MILLER, and her husband, Albert F. Miller, Plaintiffs-Appellants,

v.

LYKES BROTHERS STEAMSHIP CO., INC., Defendant-Appellee.

No. 72-2077

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 13, 1972.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

**465**

John Patterson, Icard, Merrill, Cullis, Timm & Furen, P. A., Sarasota, Fla., for plaintiffs-appellants.

David J. Kadyk, Charles W. Pittman, Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendant-appellee.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

The District Court entered summary judgment for Lykes Brothers in this removal case brought by Irene Miller and her husband, Albert, to recover for damages resulting from personal injuries to Mrs. Miller alleged to have been incurred on defendant's ship during a lifeboat drill supervised by the crew, and as a result of defendant's negligence and breach of warranty. Appellants alleged pain and suffering, physical handicap, and loss of employment by Mrs. Miller, and medical expenses and loss of consortium by Mr. Miller.[1] By answer appellee noted that suit was brought more than one year after Mrs. Miller's injury and pleaded affirmatively the limitation in the "Passenger Contract Ticket," which provides that "Carrier shall have no liability for loss of life or bodily injury unless . . . suit on such claim is begun not later than one year from the day when such death or injury shall have occurred." The District Court found this contractual provision binding on appellants. We affirm.

The "Passenger Contract Ticket" is a one page form with provisions on both front and reverse sides. The first half of the first page consists of spaces for notation of passengers' names, place of issuance, date of issuance, etc. Above the space for passengers' names the form provides, in bold face print, "This Passage is subject to terms printed, typed, stamped, or written below and on back hereof." The various contractual provisions, consisting of twenty-seven paragraphs of fine print, begin on the second half of the first page and continue on the reverse side. These contractual provisions are preceded by the following statement, in bold face print: "By acceptance of this Contract Ticket, whether or not signed by him or on his behalf, or of passage on the ship, the passenger named herein agrees that the following terms and conditions, which are incorporated herein as part hereof, shall govern the relations between and be binding upon the carrier and the passenger in every possible contingency." At the end of the contractual provisions, on the reverse side, are spaces for passengers' signatures, above which is the following statement, in bold face print: "Receipt of this Contract Ticket is acknowledged and terms and conditions hereof are accepted." The Millers signed the ticket at the designated space, but the record indicates that they did not retain a copy of it or examine closely its provisions.

---

1. Suit was brought in state court and removed on diversity grounds.

A line of cases stemming from The Majestic, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897), establish the general rule that mere notices insufficient to bring the passenger's attention to restrictions set forth on the reverse side of tickets do not incorporate the restrictions into the contract of passage. See, e. g., Silvestri v. Italia Societa Per Azioni Di Navigazione, 388 F.2d 11 (2d Cir. 1968); Maibrunn v. Hamburg-American S.S. Co., 77 F.2d 304 (2d Cir. 1935); Baer v. North German Lloyd, 69 F.2d 88 (2d Cir. 1934); cf. The Kungsholm, 86 F.2d 703 (2d Cir. 1936). Were this a standard *Majestic*-type case, we would meticulously compare the ticket here with tickets at issue in prior cases to determine the sufficiency of the notices to effect incorporation by reference. This is not, however, a typical "notice-incorporation" case. The limitation provision, embodied within the general contractual provisions beginning on the first page of the ticket and culminating just prior to the space for signatures, was an integral part of the contract of passage. Murray v. Cunard S.S. Co., 235 N.Y. 162, 139 N.E. 226, 26 A.L.R. 1371 (1923). As part of the contractual tissue the provision was binding on appellants irrespective of their failure to read it. "[P]rovisions that appear on the ticket as part of the contract of passage embodied in the ticket are binding regardless of whether they were read by the passenger, provided they are not unlawful in content." Baron v. Compagnie Generale Transatlantique, 108 F.2d 21, 23 (2d Cir. 1939). Accord, Rogers v. Furness, Withy & Co., 103 F.Supp. 314, 316 (W.D.N.Y. 1951).

Our conclusion accords fully with Silvestri v. Italia Societa Per Azioni Di Navigazione, *supra*, in which the Second Circuit analyzed the *Majestic* line of cases and concluded: "[T]he thread that runs implicitly through the cases sustaining incorporation is that the steamship line had done all it reasonably could to warn the passenger that the terms and conditions were *important* matters of contract affecting his legal rights." *Id.*, 388 F.2d at 17 (emphasis added). By this statement the Second Circuit arguably meant that restrictions on form tickets, including restrictions concededly a part of the contract, are binding only if the carrier warns the passenger of their importance as well as of their existence. The precise issue before the Second Circuit, however, was whether the lower court "erred in ruling that the conditions were incorporated." *Id.* at 13. Therefore, *Silvestri* was clearly a "notice-in corporation" case that at most only glossed the *Majestic* doctrine of incorporation by reference; it did not alter the rule that provisions appearing as integral parts of the contract of passage are binding on the parties.

■ The contractual bar to Mrs. Miller's claims operates equally to bar Mr. Miller's claims for loss of consortium and medical expenses, even though his losses, at least conceptually, may have occurred at a date substantially subsequent to the date of Mrs. Miller's injury. The contract unambiguously provides that claims for "bodily injury" shall be "begun not later than one year from the day when such death or injury shall have occurred." Such limitations are sanctioned by 46 U.S.C. § 183b(a), which provides:

> It shall be unlawful for the . . . owner of any sea-going vessel . . . transporting passengers . . . from or between ports of the United States and foreign ports to provide by . . . contract . . . a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred.

We cannot hold that the contractual provision, and the statute after which it is patterned, countenance a limitation

period for bodily injury different from the limitation period for such derivative claims as loss of consortium. Such a holding would burden the contract with a technical meaning at variance with its plain import. By a common-sense reading, the contract provides that claims for bodily injury, as well as claims derivative of that bodily injury, must be filed not later than one year from "such injury," and it is this effect that we give the provision.

In other contexts courts have found the husband's claim for loss of consortium to be separate from the wife's claim for her own physical injury. Thus, in Milde v. Leigh, 75 N.D. 418, 28 N.W.2d 530, 173 A.L.R. 738 (1947), the North Dakota Supreme Court held that a husband's claim for loss of consortium occasioned by personal injury to his wife is a distinct cause of action, against which the statute of limitations does not commence running until he has suffered the loss of services. Although Milde v. Leigh accords with the weight of authority, see Annot., 173 A.L.R. 750 (1948), we are not here concerned with a statute of limitations that commences running when the cause of action accrues. Rather, we are concerned with a contractual provision, sanctioned by statute, providing that the limitation period commences when bodily injury occurs. Fine distinctions between claims for bodily injury and claims for loss of services caused by the injury only obscure the plain meaning of the contract and leave the parties in doubt as to their contractual rights.

■ In a case analogous to the one before us, the Second Circuit analyzed the relationship between claims for bodily injury and claims for loss of consortium. In Burstein v. United States Lines Co., 134 F.2d 89 (2d Cir. 1943), defendant carrier argued that claims for loss of consortium were not claims for bodily injury within the meaning of 46 U.S.C. § 183b(a), and thus not protected by the statute's restriction on limitation periods. Reading the statute's reference to "claims for . . . bodily injury" to mean " 'claims for damages legally recoverable by reason of bodily injury sustained by a passenger,' " 134 F.2d at 91, the court overruled the carrier's contention, concluding that "there seems to be no reason for such a distinction as is here urged and the curious consequences which it would produce," *id.* at 92. The *Burstein* court's preference for common-sense statutory interpretation is equally applicable to interpretation of contractual provisions patterned after the statute. Like the *Burstein* court, we opt for the construction urged by Coke's maxim: "The Office of Judges is always to make such Construction as to suppress the Mischief and advance the Remedy; and to suppress subtle Inventions and Evasions for Continuance of the Mischief." *Id.* at 93, quoting from Heydon's Case, 3 Co. 7a, 7b, Magdalen College Case, 11 Co. 66b, 73b.[2]

Affirmed.

---

2. As a further argument, appellants contend that paragraph twenty-one of the contract provides for a shorter limitation period in the event of death than is permitted by 46 U.S.C. § 183b(c). We find it unnecessary to rule on the validity of paragraph twenty-one simply because this appeal concerns bodily injury, not death. Compare Barrette v. Home Lines, Inc., 168 F.Supp. 141 (S.D.N.Y. 1958), with Schwartz v. S. S. Nassau, 345 F.2d 465 (2d Cir.), cert. denied, 382 U.S. 919, 86 S.Ct. 294, 15 L.Ed.2d 234 (1965), and Foster v. Cunard White Star, 121 F.2d 12 (2d Cir. 1941).