Cynthia DAVIS, et al, Plaintiffs,

v.

VALSAMIS, INC., Defendant.

CIVIL ACTION NO. 3:14-CV-38

United States District Court, S.D. Texas, Galveston Division.

Signed February 09, 2016

Jerry C. Von Sternberg, Francis I. Spagnoletti, Spagnoletti Law Firm, Houston, TX, for Plaintiffs.

Harold K. Watson, Chaffe McCall, L.L.P., Eugene Wade Barr, Royston Rayzor Vickery & Williams LLP, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER

GEORGE C. HANKS, JR., UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendant Valsamis, Inc.'s ("Valsamis") Motion to Transfer Venue (Dkt. 16). Having reviewed the full record[1] and the governing legal authorities, the Court concludes that the forum-selection clause is enforceable and no "extraordinary circumstances" weigh against transfer under 28 U.S.C. § 1404(a). Accordingly, the Court **GRANTS** Valsamis's Motion to Transfer Venue. Further, the Court **ORDERS** that Plaintiffs' claims are to be **TRANSFERRED** to the U.S. District Court for the Southern District of Florida, Miami Division, for resolution of all further matters in this case.

## BACKGROUND

Plaintiffs, passengers aboard the *M/V Carnival Triumph* (the "*Triumph*")

---

1. Defendant filed a Motion to Transfer to the Southern District of Florida, Miami Division (Dkt. 16). A Response (Dkt. 22), Reply (Dkt. 24), SurReply (Dkt. 26), and Sur-SurReply (Dkt. 28) were subsequently filed. Plaintiffs filed a Motion for Partial Summary Judgment (Dkt. 23). A Response in Opposition of the Summary Judgment (Dkt. 25), and a Reply in Support of the Summary Judgment (Dkt. 29) were filed. The Court has considered all motions and briefing.

brought this action in admiralty against Valsamis seeking damages for injuries that they suffered after an engine room fire "crippled [the Vessel's] primary power source, leaving her adrift...."[2] 3rd Am. Compl., Dkt. 9, ¶ 5.09. Plaintiffs allege that, as a result of the fire, they were subjected for days to difficult and harrowing conditions, including the lack of food and water and sewage flowing throughout the Vessel. *Id.* at ¶ 5.14. Plaintiffs allege that Valsamis "designed, manufactured, and/or constructed insulation panels" and "fuel pipe covers" used on the Vessel "to reduce the temperature of existing hot spots on the [ ] engine." *Id.* at ¶ 5.03. Prior to the fire, Valsamis was hired by Carnival to perform "maintenance on the vessel, in particular its engines and diesel generators." *Id.* 5.03. Plaintiffs allege that their injuries were the result of, among other things, Valsamais's negligent maintenance of the *Triumph's* propulsion system and failure to eliminate known "hazardous and dangerous" conditions pertaining to this system. *Id.* ¶¶ 6.01-6.16.

Valsamis now seeks to transfer this action to the United States District Court for the Southern District of Florida, Miami Division, based on the forum-selection in the Ticket Contract between Carnival Corporation, d/b/a/ Carnival Cruise Lines ("Carnival") and Plaintiffs. *See* Dkt. 16. Clause 12(c) of the Ticket Contract provides that "all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise... shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami ... to the exclusion of the Courts of any other county, state, or country." *See* Dkt. 16-1 at ¶ 12(c).[3] The Ticket Contract also advised Plaintiffs, in bold and capital letters at the top of the document, that its terms were legally binding, and it specifically directed passengers to the clauses in the Ticket Contract limiting their rights to file suit, including the forum-selection clause in paragraph 12. The top of the first page of the Ticket Contract includes a notice, in bold and capital letters, advising cruise guests that Clauses 1, 4, and 10 through 13 contain important limitations of the guests' rights to assert claims against Carnival, the vessel, their agents and employees, and others "including forum-selection ....":

IMPORTANT NOTICE TO GUESTS THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING BELOW.

NOTICE: THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO CLAUSES 1, 4, AND 10 THROUGH 13, WHICH CONTAIN IMPORTANT LIMITATIONS ON

---

2. Plaintiffs assert claims for negligence, gross negligence and seek a declaratory judgment regarding its ticket contract for the cruise. *See* 3rd Am. Compl., Dkt. 9.

3. Paragraph 12(c) of Carnival's passenger ticket contract, provides in pertinent part:

[I]t is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to or from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

*See* Ticket Contract, Dkt. 16-1, Exh. E, at ¶ 12(c).

THE RIGHTS OF GUESTS TO AS-SERT CLAIMS AGAINST CARNI-VAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS, INCLUDING FORUM SELECTION, ARBITRATION AND WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS.

*See* Dkt. 16–1. The Ticket Contract further sets forth the parties covered under its terms. Pursuant to Section 1(f), the Ticket Contract extends all of Carnival's defenses and rights under this contract to Carnival's "suppliers, shipbuilders and manufacturers of component parts and independent contractors."[4] *Id.* at 1(f). The Ticket Contract instructed passengers that "[t]he acceptance or use of this ticket by the person(s) named hereon as Guests shall be deemed acceptance and agreement by each of them to all of the terms and conditions of this Passage Contract." *Id.* at 1(f).

Valsamis presents evidence showing that each Plaintiff acknowledged receipt of the Ticket Contract, and accepted its terms and conditions, prior to boarding the *Triumph.* See Dkt. 16–1, Exh. D, Petisco Decl. ¶ 12. Some Plaintiffs did so through Carnival's Online Check-In system, which allows passengers to obtain a boarding pass after completing several sections of information, including information related to the Ticket Contract's terms and conditions. *Id.* These passengers had to acknowledge receipt of the Ticket Contract and accept the terms and conditions in order to receive a boarding pass through the Online Check-In system. *Id.* at ¶ 13. Passengers who do not acknowledge re-

ceipt of the Ticket Contract terms and conditions via Online Check-In were not able to print a boarding pass. *Id.* Instead, they were provided a paper copy of the Ticket Contract at the pier on embarkation day and asked to acknowledge receipt of same. *Id.* No passenger was permitted to board the *Triumph* without first acknowledging receipt of the Ticket Contract. *Id.* at ¶ 13. The Plaintiffs' booking history notes show that each of them acknowledged receipt of the Ticket Contract terms and conditions, and confirmed acceptance of this contract. *Id.* at ¶ 14.

After extensive briefing, Valsamis's motion to transfer venue is now ripe for review. For the reasons set forth in greater detail below, the Court **GRANTS** this motion.

## ANALYSIS

■ "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When a defendant files [a § 1404(a) motion], a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.,* —— U.S. ——, 134 S.Ct. 568, 575, 187 L.Ed.2d 487 (2013). A forum-selection clause is a "significant factor that figures centrally in the district court's calculus." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108

---

4. "All rights, exemptions from liability, defenses and immunities of Carnival under this contract shall also inure to the benefit of Carnival's facilities, whether at sea or ashore, servants, agents, managers, affiliated or related companies, suppliers, shipbuilders and manufacturers of component parts and independent contractors, including, but not limit-

ed to, shore excursion or tour operators, ship's physician, ship's nurse, retail shop personnel, health and beauty staff, fitness staff, video diary staff, and other concessionaires, who shall have no liability to the Guest, either in contract or in tort, which is greater than or different from that of Carnival." Dkt. 16–1, Section 1(f).

S.Ct. 2239, 101 L.Ed.2d 22 (1988). "Because the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co.*, 134 S.Ct. at 581.

■ In considering a § 1404(a) motion to transfer, a district court should normally begin by evaluating both the convenience of the parties and various public-interest considerations, but where a valid and enforceable forum-selection clause exists, (1) the Plaintiff's choice of forum carries no weight and plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted; (2) a court should not consider arguments about the parties private interests instead deeming any private-interest factors to weigh entirely in favor of the preselected forum, and (3) a transfer of venue will not carry with it the original venue's choice-of-law rules. *Id.* at 581–82.

## A. Enforceability of Forum-Selection Clause

■ Before the Court can determine the appropriate forum in this case, it must first determine whether the forum-selection clause in each Plaintiffs Ticket Contract is valid and enforceable. *Atl. Marine Constr. Co.*, 134 S.Ct. at 581 n. 5. Since "this is a case in admiralty, federal law governs whether the forum-selection clause in [the Ticket Contract] is enforceable." *Calix–Chacon v. Glob. Int'l Marine, Inc.*, 493 F.3d 507, 510 (5th Cir.2007). "[I]n maritime actions forum-selection clauses are to be enforced unless the forum-selection clause is fundamentally unfair and therefore unreasonable." *Id.* at 493 F.3d at 511 (citing *Haynsworth v. Corporation*, 121 F.3d 956, 963 (5th Cir.1997); *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595,

111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), and *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, at 12–13, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

■ Federal law governs this Court's inquiry into the enforceability of a forum-selection clause. *See Haynsworth*, 121 F.3d at 962. Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Bremen*, 407 U.S. at 15, 92 S.Ct. 1907. "The burden of proving unreasonableness is a heavy one...." *Bremen*, 407 U.S. at 12–13, 15, 18, 92 S.Ct. 1907; *see also Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301 (5th Cir.1998).

■ To decide whether a forum-selection clause is unreasonable, the court should examine whether "(1) the incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum-selection clause would contravene a strong public policy of the forum state." *Calix–Chacon*, 493 F.3d at 511. "Fraud may invalidate a forum-selection clause, but only if the inclusion of that clause, as opposed to the signing of the entire contract, was the product of fraud." *MaxEn Capital, LLC v. Sutherland*, No. H–08–3590, 2009 WL 936895, *7 (S.D.Tex. Apr. 3, 2009), *citing Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (a forum-selection clause in a contract is not enforceable if "the inclusion of that clause in the contract was the product of fraud."). However, the mere allegation of fraudulent conduct does not suspend operation of a

forum-selection clause. Rather, the proper inquiry is whether the forum-selection clause is the result of fraud in the inducement of the forum-selection clause itself. *See Afram Carriers*, 145 F.3d at 302 n. 3 (party claiming fraud must show that the inclusion of forum-selection clause itself, not the entire agreement, was a product of fraud); *see also MacPhail v. Oceaneering Int'l, Inc.*, 170 F.Supp.2d 718, 725 (S.D.Tex.2001).

In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the Supreme Court analyzed the *"Bremen* analysis" in the "cruise ship passage contract ticke[t]" context to determine whether it was enforceable. *See Calix–Chacon*, 493 F.3d at 511–12 (summarizing *Shute*). The Supreme Court held in *Shute* that the forum-selection clause was not unreasonable "simply because it is not the subject of bargaining." *Shute*, 499 U.S. at 594, 111 S.Ct. 1522. Further, the Supreme Court also found that the clause was not fundamentally unfair even though "there is no indication that petitioner set Florida as the forum in which disputes were to be resolved as a means of discouraging cruise passengers from pursuing legitimate claims." 499 U.S. at 595, 111 S.Ct. 1522. *Shute* noted that the plaintiffs in that case provided "no evidence" of the clause being "obtained ... by fraud or overreaching", and that the plaintiffs "conceded that they were given notice of the

forum provision and, therefore, presumably retained the option of rejecting the contract with impunity." *Id.*

■ This case resembles *Shute* in several respects. First, the forum-selection clause in this case, and its surrounding provisions, are nearly identical to language approved by the Supreme Court in *Shute*. As in *Shute*, the language of the forum-selection clause here and the Ticket Contract's terms stressing the importance of provisions such as the forum-selection clause, "reasonably communicate" the clause "to [Carnival's] passengers." *See Shute*, 499 U.S. at 590, 111 S.Ct. 1522.

Second, Valsamis established that, at a minimum, each Plaintiff acknowledged receipt of the Ticket Contract before boarding the *Triumph* and being given a reasonable opportunity to review its provisions. Since Plaintiffs thereafter accepted passage on the *Triumph*, they are bound under federal law by the terms of the Ticket Contract regardless of whether they read and signed it.[5] *See, e.g., One Beacon Insurance Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir.2011)(holding that when a party receives clear reference to the terms and conditions found in a maritime contract, including where they can be found on a website, those terms and conditions are binding, regardless of whether the party chose to read them).

**5.** It is well established that: conditions and limitations in contracts for the carriage of passengers by water have been held valid, and when placed in the body of a passage contract for an ocean voyage, so as to be a part thereof, they become binding on the passenger by his mere acceptance of the ticket within such a time as to give him an ample opportunity to examine its contents. *See Carpenter v. Klosters Rederi A/S*, 604 F.2d 11, 13 (5th Cir.1979) (citations omitted); *see also Schaff v. Sun Line Cruises, Inc.*, 999 F.Supp. 924, 926 (S.D.Tex. 1998); *Lemoine v. Carnival Cruise Lines, Inc.*, 854 F.Supp. 447, 448–49 (E.D.La.1994). "The passenger need not have actual notice of the contents, and his failure to read the ticket does not preclude him from being bound by its terms." *Elliott v. Carnival Cruise Lines*, 231 F.Supp.2d 555, 561 (S.D.Tex.2002); *see also Carpenter*, 604 F.2d at 13. In fact, passengers are bound by the terms of a cruise ticket contract even where they have never opened the ticket envelope. *Geller v. Holland–America Line*, 298 F.2d 618, 619 (2d Cir.1962), *cert. denied*, 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 403 (1962).

Third, Valsamis has shown that, as in *Shute*, .Plaintiffs "retained the option of rejecting the contract with impunity", because Carnival's cancellation policy allowed for a complete refund. *Shute*, 499 U.S. at 595, 111 S.Ct. 1522. Finally, as in *Shute*, there is no indication that the forum-selection clause is intended to discourage legitimate claims by requiring that they be filed in Florida. *Id.*

Confronted with these types of similarities to *Shute*, other courts in the Fifth Circuit have found forum-selection clauses like the one in this case to be enforceable. *See, e.g., Cline v. Carnival Corp.*, No. 3:13–CV–1090–B, 2014 WL 550738 (N.D.Tex. Feb. 12, 2014); *Bowling v. Carnival Corp.*, No G–08–0250, 2009 WL 890454 (S.D.Tex. March 30, 2009); *Lunday v. Carnival Corp. d/b/a Carnival Cruise Lines, Inc.*, 431 F.Supp.2d 691, 693–96 (S.D.Tex.2004); *Momin v. Carnival Cruise Lines, Inc.*, No. H–06–2806, 2006 WL 3741924 at *2 (S.D.Tex. Dec. 18, 2006); *Williams v. M/V Jubilee*, 431 F.Supp.2d 677, 680–81 (S.D.Tex.2003); *Elliott v. Carnival Cruise Lines*, 231 F.Supp.2d 555, 560–61 (S.D.Tex.2002). Also, the exact language of this passenger Ticket Contract and the forum-selection clause in question have been declared valid and enforceable by the United States Supreme Court. *Shute*, 499 U.S. at 590–91, 111 S.Ct. 1522. Further, Plaintiffs have not met their heavy burden of establishing that, in these particular

circumstances, enforcement of the clause would be unreasonable· under one of the four bases set forth by the *Bremen* analysis.[6] *Mitsui & Co. (USA) v. Mira M/V*, 111 F.3d 33, 35 (5th Cir.1997). Accordingly, the Court finds that the forum-selection clause contained in the Ticket Contract is not fundamentally unfair, and is therefore valid and enforceable.

### B. The Scope of the Forum-Selection Clause

■ Next, the Court must determine whether the forum-selection clause covers Plaintiffs' claims against Valsamis. In determining the scope of a forum-selection clause, courts should examine the language of the parties' contract to determine which parties and causes of action fall within its scope. *Blueskygreenland Environmental Solutions, LLC v. Rentar Environmental Solutions, Inc.*, Civ. A. No. 4:11–cv–1745, 2011 WL 6372842, *4 (S.D.Tex. Dec. 20, 2011), *citing Marinechance Shipping Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998) (the court should "look to the language of the parties' contract to determine which causes of action are governed by the forum-selection clauses"). "[T]he scope of a forum-selection clause is not limited solely to claims for breach of the contract that contains it." *MaxEn Capital, LLC v. Sutherland*, No. H–08–3590, 2009 WL 936895, *6 (S.D.Tex. Apr. 3, 2009). The scope of a forum-selection clause depends mainly on

---

**6.** In their request for ·declaratory relief and motion for summary judgment, Plaintiffs assert several reasons, including "material failure of consideration" and unequal bargaining power, for the Court to find that the Ticket Contract is unenforceable. However, in their response to the motion to transfer venue, Plaintiffs do not assert any of these arguments. *See* Dkt. 22. Assuming *arguendo* that Plaintiffs had asserted· these arguments in the response, almost identical arguments have been addressed and rejected by previous courts. *See Cline v. Carnival Corp.*, No. 3:13–

CV–1090–B, 2014 WL· 550738 at *3–5 (N.D.Tex. Feb. 12, 2014); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590–91, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (analyzing cruise contract substantially similar, holding passengers bound by non-negotiated forum selection provisions contained in cruise contracts); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (expressly disapproving the notion that a party may avoid a forum-selection clause by alleging a basis for avoiding the contract as a whole.).

how broadly the clause is worded. *MaxEn Capital*, 2009 WL 936895 at \*6.

Here, the language of the Ticket Contract is plain and unambiguous. It expressly extends the all of the "rights, exemptions from liability, defenses and immunities of Carnival under this contract" to Carnival's "suppliers, shipbuilders and manufacturers of component parts and independent contractors." In the presence of such clear language, arguments about the parties' intent are irrelevant.

In this case, Plaintiffs allege that Valsamis "designed, manufactured, and/or constructed" component parts on *Triumph's* engines. *See* Dkt. 9, ¶ 5.03. Plaintiffs also allege that Carnival contracted with Valsamis to perform work on the engines. *Id.* The Court finds that Valsamis is clearly within the class of beneficiaries of Ticket Contract as set forth in clause 1(f). Accordingly, the Court finds that Valsamis is entitled to rely upon all of the rights available to Carnival under the Ticket Contract, including the forum-selection clause. As such, the Court must weigh only the public-interests factors in its transfer analysis.

### C. No Extraordinary Circumstances Unrelated to Convenience of Parties Warrant Denial of Transfer

Because a contractually valid forum-selection clause applies to the present case, the Court must next determine whether any "extraordinary circumstances" unrelated to the convenience of the parties warrant denial of transfer. *Atl. Marine Constr. Co.*, 134 S.Ct. at 575, 581 & n. 5. The plaintiff bears the burden of establishing that transfer is unwarranted. *Id.* at 581. If no such "extraordinary circumstances" exist, the Court should grant the motion to transfer in accordance with the forum-selection clause. *Id.* at 575, 581.

When determining whether "extraordinary circumstances" warrant the denial of transfer, the Court considers public-interest factors such as "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case;[7] and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Atl. Marine Constr. Co.*, 134 S.Ct. at 575, 581 & n. 6; *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004). "[T]he party acting in violation of the forum-selection clause ... must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *See Atl. Marine Constr. Co.*, 134 S.Ct. at 583; *see also In re Rolls Royce Corp.*, 775 F.3d at 674–83 (discussing *Atlantic Marine*); *Cline v. Carnival Corp.*, No. 3:13–cv–1090–B, 2014 WL 550738, at \*6 (N.D.Tex. Feb. 12, 2014) (same).[8] "[T]he

---

7. Familiarity of the forum with the governing law should only be considered a public-interest factor weighing in favor of transfer if the governing law is "exceptionally arcane." *See Atl. Marine Constr. Co.*, 134 S.Ct. at 584.

8. Relying on *In Re Rolls Royce Corp.*, 775 F.3d 671 (2014), Plaintiffs argue that the Court must analyze both public and private factors because Valsamis does not provide the Court with sufficient proof that it should be a party to the forum-selection clause. Dkt. 22, p.8. Plaintiffs contend that Valsamis's "pas-

senger interaction" does not conform with the type of "day-to-day interaction" fitted for "Himalaya" clause cases. *Id.* at p. 7. Plaintiffs' reliance on this holding for this argument is misplaced. The Fifth Circuit's opinion in *In re Rolls Royce Corp.* did not address circumstances even remotely similar to the facts of this case. The opinion in that case addressed how a court should analyze motions to transfer venue where there are multiple defendants who are not a party to a forum-selection clause. *See In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir.2014) cert. denied sub nom.

practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Constr. Co.*, 134 S.Ct. at 582.

Plaintiffs contend transfer should be denied because "[t]he vast majority of the Plaintiffs herein are from Texas, as is the Defendant." They also contend that "[t]he vessel sailed from Galveston to a neighboring country, and was to return to the Island. Florida, other than being the preferred venue of cruise lines, has no connection to this matter. In fact, Defendant, as a Texas company, could probably oppose jurisdiction and venue in Florida in other circumstances." *See* Dkt. 22, pg. 8-9. The Court finds that Plaintiffs have not shown the existence of "most unusual" or "extraordinary circumstances" sufficient to defeat Valsamis' motion to transfer. *See Atl. Marine Constr. Co.*, 134 S.Ct. at 575, 581, 583 ("a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer").

### CONCLUSION AND ORDER

The Ticket Contract that Plaintiffs agreed to includes a valid and enforceable forum-selection clause requiring that all disputes related to the cruise Plaintiff took to be brought in Florida. Even where Plaintiffs sued a supplier and manufacturer of component parts of Carnival's vessel rather than Carnival itself, Plaintiffs have failed to demonstrate that enforcement of this forum-selection clause would be unreasonable. Additionally, Plaintiffs have not established that any "extraordinary circumstances" unrelated to the convenience of the parties weigh against transfer.

Accordingly, it is hereby **ORDERED** that Defendant's Motion to Transfer Venue (Dkt. 16) is **GRANTED** and this case shall be **TRANSFERRED** to the United States District Court for the Southern District of Florida, Miami Division.

All other pending motions in this case are **DENIED AS MOOT.** Any unresolved issues are respectfully deferred to the considered judgment of the transferee court. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**

*PHI Inc. v. Rolls Royce Corp.*, — U.S. —, 136 S.Ct. 45, 193 L.Ed.2d 27 (2015). The underlying litigation *In re Rolls Royce Corp.* concerned the liability stemming from a helicopter crash in the Gulf of Mexico. The Plaintiff brought suit in Louisiana state court against three parties: (1) Rolls Royce Corporation, who designed and manufactured the engine bearing, (2) Apical Industries, Inc., who designed, manufactured, and sold the pontoon flotation system, and (3) Offshore Helicopter Support Services, Inc., who repaired and reworked the float system before the crash. The Fifth Circuit held that, in a multi-party case where one defendant was a party to a contract with a forum-selection clause and the other defendant(s) were not parties to the contract or beneficiaries of the clause, the proper procedure was to sever the claim against the defendant who was a party to the contract and transfer the severed case to the selected forum. *Id.* Unlike *In re Rolls Royce Corp.*, here the record reflects significantly different facts. In this case, the defendant is clearly identified as a beneficiary of the contract containing a valid forum-selection clause. The Court also notes that *In re Rolls Royce Corp.*, the Fifth Circuit remanded the case with instructions to sever and transfer the claims against Rolls Royce—the designer and manufacturer of the engine.